UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDWARD CUESTAS,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                Defendant.

CASE NO. C09-5316BHS

REPORT AND RECOMMENDATION

Noted for March 19, 2010

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). This matter has been briefed. Oral argument was considered on February 23, 2010. After considering the argument and reviewing the record, the undersigned recommends that the Court remand the matter to the administration for further consideration.

## **INTRODUCTION AND PROCEDURAL HISTORY**

The ALJ is required to give specific and legitimate reasons for rejecting the evaluations of the examining psychiatrist or psychologists. Also, the ALJ is required to evaluate each

REPORT AND RECOMMENDATION - 1

claimed impairment and the resulting impact on plaintiff's ability to perform work. In this case, the ALJ failed to meet these requirements. Although plaintiff argues that these failures should result in reversal and an immediate award of benefits, because the medical evidence remains in dispute, this matter should be remanded for further consideration by the administration.

Born in 1965, plaintiff was 38 years old on August 1, 2004, his alleged onset date of disability. Tr. 108, 390. Plaintiff has eleven years of education and completed his GED in 2007. Tr. 112, 419. His past relevant work included working as a groundskeeper, janitor, construction worker, and dish washer. Tr. 70, 109. Plaintiff has an extensive history of violent behavior that at times has lead to incarceration. Tr. 323, 335.

Plaintiff filed applications for disability benefits and supplemental security income benefits on July 18, 2005, alleging disability due to impulse control disorder, depression, posttraumatic stress disorder, a learning disability, and a cognitive disorder. Tr. 108, 390.

His applications were denied initially and on reconsideration. Tr. 52-54, 49-50. He requested a hearing, and the matter was assigned to an administrative law judge ("ALJ"). The hearing was held April 2, 2008. Tr. 413-49. On August 29, 2008, the ALJ issued a decision finding that plaintiff was severely impaired, but not disabled. Tr. 17-33.

Specifically, the ALJ determined that plaintiff had the following severe impairments: substance abuse disorder; carpal tunnel syndrome; personality disorder; and obesity. Tr. 19. However, after considering the record, the ALJ decided that plaintiff had the residual functional capacity to perform light work, including the ability to frequently handle and finger. Tr. 22. The ALJ further found that plaintiff was capable of performing simple, routine work that involved no contact with the public and only superficial, occasional contact with coworkers. Id.

REPORT AND RECOMMENDATION - 2

Plaintiff requested review of the ALJ's decision, which the administration's Appeals Council denied on April 1, 2009. Tr. 6-9. The Appeal Council's denial of review made the ALJ's decision the final administrative decision.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff filed his complaint with the court on May 29, 2009. Plaintiff argues that: (i) the ALJ did not give specific and legitimate reasons for rejecting the evaluations of the examining psychiatrist or psychologists when she arrived at conclusions that plaintiff had lesser limitations; and (ii) the ALJ did not properly consider plaintiff's upper extremity impairments when she did not discuss his "trigger" finger. Plaintiff's Opening Brief, (Doc. 13).

After reviewing the matter, the undersigned finds the ALJ failed to give specific and legitimate reasons when evaluating the medical evidence and failed to properly consider plaintiff's "trigger" finger impairment. The matter should be remanded to the administration for further consideration.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may

neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his or her impairments are of such severity that he or she is unable to do her previous work, and cannot, considering his or her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## **DISCUSSION**

1. ***The ALJ Failed To Properly Consider The Opinions of Dr. Michels and Dr. Neims***

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). She may not, however, substitute her own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th

Cir.1984)(citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

After reviewing the medical reports and evaluations, the ALJ in this case spent less than one page providing reasons for her conclusion that plaintiff had sufficient residual functional capacity to perform work. *See* Tr. 32 – 33. Nowhere in that explanation is specific reasons given for her conclusion that plaintiff has the capability to make a successful adjustment to other work in the national economy. Although defendant cited various parts of the medical record that purportedly support the ALJ's findings, this court has no way of knowing if these were in fact relied upon by the ALJ in reaching her conclusion and there was significant evidence to conclude otherwise. While this court will not reweigh the evidence, this case should be remanded so that the ALJ can properly support her conclusions with appropriate references to what medical evidence she is relying upon to reach her conclusions. A few examples from the decision illustrate this conclusion.

REPORT AND RECOMMENDATION - 5

### a) *Dr. Paul Michels*

Dr. Michels is a psychiatrist who examined and evaluated plaintiff on October 15, 2005. Tr. 255-60. Dr. Michels opined that plaintiff developed a pattern of maladaptive coping consistent with Antisocial Personality Disorder as well as Polysubstance Dependence. Tr. 260. Dr. Michels concluded, "interactions with others may pose extreme difficulty for the claimant." Id. He noted that Mr. Cuestas had a long history of failure to conform to social norms and laws, consistent with a diagnosis of Antisocial Personality Disorder. Id.

The ALJ discussed Dr. Michels' opinion in her decision. Tr. 26, 30. The ALJ stated, "Dr. Michels' opinion is persuasive as it is consistent with the bulk of the record, and his diagnoses are supported by the information in his report, and corroborated by other evidence." Tr. 26. The ALJ also stated, "[t]he undersigned has considered Dr. Michels' opinion and accords it considerable weight, as it is not inconsistent with the mental residual functional capacity set forth above. The limitation to simple, routine work sufficiently addresses the claimant's low stress tolerance, and the limitation against public contact and to limited interaction with coworkers is consistent with the limitations assessed by Dr. Michels." Tr. 30.

The ALJ's decision is not supported by Dr. Michels' evaluation as suggested. Dr. Michels' primary diagnosis was Antisocial Personality Disorder. Tr. 259. Dr. Michels' stated:

> [Plaintiff] presents with a long history of failure to conform to social norms and laws. He has been arrested frequently. He has been impulsive, irritable, and aggressive. He has shown reckless disregard for the safety of others. He has been irresponsible with work. He does not talk of any of this with any sense of remorse. This is all generally consistent with Antisocial Personality Disorder. Occasionally he experiences psychological distress that is likely driven by chronic psychosocial chaos and disruption which in turn is driven by his pattern of maladaptive coping. He is involved in ongoing substance abuse treatment, which is the most likely treatment modality to offer stabilization in his psychological functioning. Mental health treatment could provide some benefit as well though the likelihood for dramatic change or improvement in Antisocial Personality Disorder is a bit guarded. At present, the claimant's focus and concentration

REPORT AND RECOMMENDATION - 6

> appear adequate. Pace and persistence seem fair. He seems to have the intellectual capacity to understand, remember, and follow both complex and simple instructions. At times he may experience so much subjective psychological distress that he would feel incapable of completing specific tasks or chores in a timely or consistent manner. Interactions with others may pose extreme difficulty for the claimant. Stress would likely be met with a pattern of maladaptive coping and in turn worsening in his psychosocial strains and subjective psychological distress. He does seem to have the intellectual capacity to manage his own finances.

Tr. 260.

The ALJ's residual functional capacity assessment is not consistent with Dr. Michels' opinion. For instance, the ALJ's assessment states that plaintiff only has moderate limitations in social functioning. Tr. 21. Dr. Michels' opinion does not support moderate limitations. The ALJ found that plaintiff could perform work requiring occasional superficial contact with co-workers, with no limitations in his ability to interact with supervisor. Tr. 22. Again, Dr. Michels' evaluation does not support plaintiff's ability to interact occasionally with co-workers or working with supervisors on an unlimited basis. In contrast, Dr. Michels clearly states that any interaction with others would pose "extreme difficulty" and stress would likely result in a worsening of plaintiff's psychological condition. Tr. 260. In sum, nowhere in Dr. Michels' records does he conclude that plaintiff would be capable of the type of skills necessary to perform "simple, routine work that involved no contact with the public and only superficial, occasional contact with coworkers." Tr. 26 To the contrary, Dr. Michels' opined that plaintiff would have difficulty completing specific tasks or chores in a regular and consistent manner. Tr. 260. Further, he concluded that "[s]tress would likely be met with a pattern of maladaptive coping and in turn worsening in his psychosocial strains and subjective psychological distress." Id. The ALJ erred when she indicated she was adopting Dr. Michels' opinion, but failed to fully address his findings. Tr. 22

### b) Dr. Daniel Neims

Plaintiff was examined and evaluated by Dr. Neims, a psychologist, on two different occasions. The first exam was on May 20, 2005. Tr. 196-209. The second exam was performed on June 17, 2008. Tr. 380-89. Dr. Neims was not a treating physician, but rather conducted the examination and evaluation at the request of the Washington Department of Social and Health Services.

In 2005, Dr. Neims found plaintiff to be "chronically mentally ill", Tr. 199, and had a marked severity in his ability to interact with others or tolerate the pressures and expectations of a normal work setting, Tr. 198. In 2008, Dr. Neims similarly found that plaintiff would have marked difficulty with judgment and decisions and marked limitations in public contacts and his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 384. Dr. Neims noted that plaintiff continued to be impaired from gainful employment. Tr. 388, 385.

Similar to her treatment of Dr. Michels, the ALJ stated that she did not reject Dr. Neims' opinions; rather she found that her residual functional capacity assessment was consistent with his opinion. Tr. 30. The ALJ stated, "Dr. Neims' assessment is not inconsistent with the mental residual functional capacity for simple, repetitive tasks with limited social contact; in fact he assessed only mild limitations in the claimant's ability to understand, remember and follow simple tasks." Id.

The ALJ's decision implies plaintiff would be able to tolerate the pressures of work, suggesting plaintiff would not have marked limitations in a work setting, which is exactly opposite of what Dr. Neims opined. Dr. Neims rated plaintiff's difficulty responding appropriately to and tolerating the pressures and expectations of a normal work setting. Dr.

REPORT AND RECOMMENDATION - 8

Neims also rated plaintiff's ability to relate appropriately to the public as marked impairments. Dr. Neims did not suggest that the work setting would be tolerable if it was limited to simple, repetitive tasks with limited social contact, as suggested by the ALJ. Moreover, Dr. Neims stated that plaintiff would be markedly impaired in his ability to perform routine tasks. Tr. 384.

It is clear the ALJ rejected portions of Dr. Neims' opinions. The ALJ's reasons for rejecting Dr. Neims' opinions are not "clear and convincing" or "specific and legitimate". The ALJ did not provide appropriate reasons for rejecting these limitations assigned by Dr. Neims.

### c)    *Dr. Kimberly Wheeler*

Dr. Wheeler examined and evaluated plaintiff on October 13, 2004 at the request of the Washington State Department of Social and Health Services. Tr. 177-83. Dr. Wheeler administered the Beck Depression Inventory, on which plaintiff scored a 29, indicating marked depression. Tr. 177. She concluded that he had a marked depressed mood (he was tearful on examination) and marked verbal expression of anxiety or fear. Tr. 178. She noted that plaintiff had moderate symptoms of expression of anger with a history of seven assault charges and social withdrawal. Tr. 178. Dr. Wheeler diagnosed major depression, single episode, marked, and polysubstance dependence, in remission. Id. Dr. Wheeler found that plaintiff would have marked limitations in his ability to exercise judgment and make decisions; interact appropriately in public contacts; and respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 179. She also found that he would have moderate limitations in his ability to learn new tasks because he "gets bored, distracted and impatient." Id. She noted that he very much wanted to work, but was afraid he was going to "go off" on somebody because of his depression. Id.

The ALJ indicated that she was not crediting Dr. Wheeler's opinion or giving it significant weight, except to the extent that it was consistent with her own conclusions. Tr. 24, 30. Contrary to Dr. Wheeler's opinions and as noted above, the ALJ found that plaintiff could perform regular sustained work activity on a full-time basis, as long as he performed simple, routine work that involved no contact with the public and only occasional, superficial contact with co-workers. Tr. 22. The ALJ explained that she was not giving Dr. Wheeler's opinion significant weight because it was "inconsistent with the bulk of the record, discussed below, which consistently reflects a diagnosis of personality disorder." Tr. 24. She also rejected Dr. Wheeler's opinion finding she "appeared to rely primarily on the claimant's self report regarding symptoms, which the evidence shows have been inconsistent and subject to other credibility concerns." Tr. 24.

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Wheeler. In light of the court's ruling on Dr. Michels and Dr. Neims, the ALJ may have also erred in assessing Dr. Wheeler's opinion, as it appears the ALJ's interpretation of the bulk of the medical evidence is not as strongly inconsistent with Dr. Wheeler's opinion. Because the errors made in assessing Dr. Michels' and Dr. Neims' opinions requires remand to reconsider all of the medical opinion evidence, it is not necessary to discuss the details of the ALJ's assessment of Dr. Wheeler's opinion.

During oral argument, defendant also pointed to the medical evidence in the record that supports the ALJ's decision, including the finding of Dr. Eather, Tr. 146-48, and Dr. Cagle, Tr. 323-36. While, arguably, this evidence may or may not support the ALJ's conclusions, it is clear that the ALJ did not provide any analysis of this evidence in her one-page determination of residual functional capacity. *See* Tr. 32-33.

REPORT AND RECOMMENDATION - 10

In sum, the ALJ erred by failing to provide "clear and convincing" reasons for rejecting uncontradicted medical opinion evidence and failing to identify conflicting evidence and providing "specific and legitimate" reasons for rejecting examining physicians' conclusions. The ALJ further erred when she failed to include all of the limitations discussed by the medical providers, upon whom the ALJ found persuasive and gave significant weight, in her analysis of plaintiff's residual functioning capacity. Remand is necessary to provide the administration the opportunity to reconsider all of the medical opinion evidence, and provide specific support for these conclusions.

## 2. *The ALJ Erred When She Failed To Consider Finger Impairment*

Step-two of the evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996). An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-28 ("SSR 85-28"). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)(adopting SSR 85-28). The Ninth Circuit describes the step- two inquiry as "a de-

REPORT AND RECOMMENDATION - 11

minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (*citing* Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)).

The issue is whether the ALJ erred when she did not find that plaintiff's "trigger" finger was a severe impairment. Plaintiff reported problems with his hands, including symptoms of carpal tunnel and his long fingers getting stuck in certain position, referred to as "trigger" finger. Tr. 347. The ALJ made no findings regarding plaintiff's "trigger" finger.

During oral argument, defendant argued that the ALJ's discussion of plaintiff's carpal tunnel syndrome was sufficient. From all indications, these are different conditions that both happen to involve the upper extremity. Further, defendant argues that the ALJ's decision should be upheld because plaintiff admitted the problem with trigger finger could be fixed. The ALJ did not say this was the reasoning behind her decision, and instead concluded, without analysis, that plaintiff could be employed in a job that required continuous "fingering" without evaluating the functional capacity of plaintiff's fingers.

Remand is necessary for the ALJ to consider whether plaintiff's "trigger" finger impairment meets the de minimis requirement at step two of the sequential evaluation process, and if so, to determine whether it impacts plaintiff's residual functional capacity.

## 3. *Remand for Further Consideration, Rather than Reversal for an Award of Benefits, is Appropriate*

The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir.1989) (*citing* Varney v. Secretary of HHS, 859 F.2d 1396, 1399 (9th Cir., 1988). In Varney, the Ninth Circuit held that in cases where the record is fully developed, a remand for further proceedings is unnecessary. Varney, 859 F.2d at 1401. *See also* Reddick v. Chater, 157 F.3d 715, 728-730 (9th Cir. 1998)(case not remanded for further proceedings because it was clear

REPORT AND RECOMMENDATION - 12

from the record claimant was entitled to benefits); Swenson, 876 F.2d at 689 (directing an award of benefits where no useful purpose would be served by further proceedings); Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir.1989)(same); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987)(accepting uncontradicted testimony as true and awarding benefits where the ALJ failed to provide clear and convincing reasons for discounting the opinion of claimant's treating physician).

Plaintiff argues that the court should consider reversing the administrative decision and remanding the matter only to calculate of an award of benefits. As discussed above, the undersigned is persuaded that remand for further consideration of the medical evidence is the appropriate remedy in this matter.

## **CONCLUSION**

Based on the foregoing discussion, the Court should remand the matter to the administration for further consideration. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 19, 2010, as noted in the caption.

DATED this 24th day of February, 2010.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13